EXHIBIT B
(Murphy Decl.)

STATE OF MAINE
CUMBERLAND, ss.

CIVIL ACTION
DOCKET NO. 38

HAROLD E. ARNDT and

ISLAND ROVER FOUNDATION

    Plaintiffs,

    v.

TOWN OF FREEPORT

    Defendant.

**COMPLAINT**

NOW COME Plaintiffs Harold E. Arndt and the Island Rover Foundation (collectively "Plaintiffs") ("Arndt") ("IRF"), by and through undersigned counsel, and as for their Complaint against Defendant Town of Freeport allege as follows:

**The Parties and Jurisdiction**

1.    Plaintiff Harold E. Arndt is and was at all times relevant herein a citizen of the United States and a resident of the Town of Freeport, Cumberland County, Maine.

2.    Plaintiff Island Rover Foundation ("Foundation") is a 501(c)(3) non-profit corporation organized and existing pursuant to the laws of the State of Maine and the United States.

3.    Defendant Town of Freeport (hereinafter "Defendant Town" or "Town") is and was at all times relevant herein a municipal corporation organized and existing under the laws of the State of Maine, with its Town Hall located at 30 Main St, Freeport, ME 04032.

4.    Jurisdiction and venue over this action is proper in the Superior Court of the State of Maine for Cumberland County because the vessel and property at issue is located therein.

STATE OF MAINE
Cumberland, ss. Clerk's Office

FEB 02 2026

RECEIVED

1

### Factual Allegations

5.     The *Island Rover* is an 89-foot steel schooner that was constructed by Harold Arndt, with later assistance by Carter Becker, through his personal efforts and those of Island Rover Foundation, as a demonstration project of what can be built while utilizing what is popularly considered "surplus," "waste," "repurposing," or "junk."

6.     Mr. Arndt, with the help of friends, family, and volunteers, began construction of *Island Rover* (the "Vessel") on Mr. Arndt's property in the Lower Flying Point neighborhood in the mid-1990s with the eventual purpose of launching the schooner and using it as a floating classroom for educational purposes.

7.     In July 2000, Mr. Arndt formed IRF as a non-profit corporation for the purpose of raising funds for the continued construction of the Vessel and with the mission of environmental and experiential education programs utilizing the Vessel.

8.     While the Vessel was originally built on property belonging to Mr. Arndt and subsequently transferred to IRF, the Vessel was moved approximately 100 feet, for reasons described further below, to a private neighborhood right-of-way adjacent to the property at 0 Bucknam Road in Freeport, Maine, identified on the Town of Freeport Tax Map 5 as Lots 15, 30, and 31.

9.     On March 9, 2003, Mr. Arndt transferred the property at 0 Bucknam Road in Freeport, Maine to IRF.

10.     On July 6, 2004, the Town notified Mr. Arndt and IRF, alleging, *inter alia*, that the Vessel and its equipment, tools, and components, in the MDR-I residential zone violated various Town ordinances, including that it constituted a "junk yard" and "manufacturing use" in the

2

residential zone pursuant to Freeport, Me., Zoning Ordinance, § 404 (the current version of the Town Ordinance related to the MDR-I).

11.    Mr. Arndt represented himself *pro se* in defense of the allegations brought by the Town in the Fall of 2004.

## 2005 Consent Agreement

12.    On February 15, 2005, following discussions between Mr. Arndt, IRF, and the Town, in which Mr. Arndt and IRF were not represented by counsel, the parties reached and executed a consent agreement drafted by the Town, in which IRF and Mr. Arndt, reluctantly and under pressure from the Town, recognized that IRF was in violation of Town ordinances preventing manufacturing and operation of a junk yard in the Medium Density Residential District 1 Zone (MDR-I).

13.    The 2005 agreement required Mr. Arndt and IRF to continue working on the Vessel so it could be launchable and required Mr. Arndt and IRF to remove the Vessel within five years (2010).

14.    The Town's lawsuit had an unintended but unmistakable chilling effect on the IRF's sponsors and volunteers, resulting in all progress related to construction and fundraising for the Vessel's completion to come to a halt. Mr. Arndt was unable—single-handedly—to complete construction, thereby unwillingly and inadvertently violating the Consent Agreement.

15.    When the Consent Agreement expired in 2010, the Vessel had not yet been completed, and it had not been moved.

## 2010 Consent Agreement

16. On January 26, 2010, Mr. Arndt and the Freeport Town Manager at the time (Peter Joseph) signed another Consent Agreement that was due to expire in another five years (2015).

17. The 2010 Consent Agreement adopted the same alleged violations as the 2005 Consent Agreement, that the IRF's construction of the Vessel constituted a manufacturing use that is not permitted in the MDR-I residential zone and that the property was a junk yard under Town ordinances.

18. The Consent Agreement gave the IRF three years complete construction on the Vessel and remove it and all stored materials from the IRF's property. If this requirement was not met, the Consent Agreement permitted the Town to impose penalties of $100 per day for each day the violation exists.

19. In 2011, Mr. Arndt asked Carter Becker, the owner and operator of Falls Point Marine, Inc. ("Falls Point") if he would help him set up a timeline to finish and launch the Vessel.

20. Mr. Becker and his business were initially hired only to develop a plan to transport and launch the Vessel.

21. During this time, other contractors were working on completing the Vessel, but the work was piecemeal, part-time, and slow-going.

22. On August 28 and 31, 2012, following a site visit on August 13, 2012, by the Department of Environmental Protection, Mr. Arndt received two letters that cleared him of any solid or toxic waste and hazardous waste violations.

23. On February 26, 2013, the Town Council ordered the Town Codes Enforcement Officer ("CEO") to perform an onsite inspection of the IRF site to determine if any junk yard violations existed.

24.     The Town CEO found no violations of the junk yard ordinance on June 11, 2013 because Mr. Arndt had proven that all materials were going to be incorporated into the construction of the Vessel. A true copy of the Town CEO Fred Reeder's Affidavit dated September 28, 2017 is attached hereto as **Exhibit A**.

The 2014 Lawsuit and Consent Agreement

25.     On January 10, 2014, the Town filed a lawsuit against Mr. Arndt and the IRF seeking removal of the Vessel from the property. CV-14-28, Compl. (Me. Super. Ct., Cum. County. Jan. 10, 2014).

26.     Following the lawsuit, contractors working on the Vessel began to abandon the project because of the Town's opposition to the Vessel's construction and the further threat created by the litigation.

27.     IRF had also struggled further to raise donations and recruit volunteers because of the Town's opposition to the Vessel and the litigation.

28.     On June 26, 2014, the parties engaged in mediation, in which the parties reached an agreement that included a Memorandum of Agreement (MOA), a true copy of which is attached hereto as **Exhibit B**.

29.     During the course of mediation and subsequent negotiations, Mr. Arndt continued to represent himself *pro se*.

30.     Through the MOA, the Town, IRF and Mr. Arndt agreed that the IRF and Mr. Arndt would have until September 9, 2016, to remove the Vessel outside of the Town of Freeport or to a conforming site within the Town.

31.     The MOA also gave the Town a recordable security interest in the land on which the Vessel sat and a UCC interest in the Vessel itself that would be self-executing.

32.    As part of the MOA, the Town agreed to execute letters that would make clear that the Town would "'hold harmless' any potential donors for liability under this agreement or the previous consent agreements executed by the Town and the Foundation and/or Captain Arndt and a similar letter for contractors. . . ."

33.    The Town further agreed "to provide technical support with regard to any permitting issues that may arise and, to the extent allowed by law will support any permitting applications necessary for third party permits such as the Department of Environmental Protection, Department of Marine Resources or the Department of Transportation or other third parties." *Id.*

34.    At the specific request of Carter Becker, through counsel, on July 25, 2014, the Town issued several public letters that were functionally a "hold harmless agreement," in which the Town stated that it was "pleased to announce that the legal situation has been brought to a satisfactory conclusion" and that the Town "will not make any claim against you for furnishing labor or providing material for the construction of the Island Rover, and will make no claim against you in any way related to the consent agreement between the Island Rover Foundation and the Town of Freeport."

35.    On August 21, 2014, the Town added a Supplemental Memorandum of Agreement ("SMOA"), a true and correct copy of which is attached hereto as **Exhibit C**, to the MOA, which specified interim benchmarks for 2014, 2015, and 2016 that detailed requirements related to the removal of stored materials, selection of contractors, and selecting a site for launch.

36.    On September 2, 2014, the Superior Court approved the Agreement that included both the MOA and the SMOA.

37.    Relying on the hold harmless letters issued in July 2014, Carter Becker, provided considerable time and resources, including time and labor in excess of $475,000 (as of January 2019 with more continuing thereafter), towards the completion and launch of the Vessel.

38.    In an effort to secure Mr. Becker's and Falls Point's substantial, ongoing investment in the Vessel, Mr. Arndt and IRF gave Mr. Becker and Falls Point three forms of security: (1) a UCC-1 Financing Statement, (2) a 75% interest in the Vessel from Mr. Arndt to Mr. Becker, and (3) a $250,000 mortgage on Lot 30 of the Property from the IRF to Mr. Becker.

39.    However, notwithstanding the best efforts of Mr. Arndt, IRF, Mr. Becker, and Falls Point, by the Sept. 9, 2016, deadline the Vessel was not complete and it had not been moved.

40.    On September 28, 2016, the Town issued a stop-work-order.

41.    On January 30, 2017, the Town of Freeport filed a motion for Contempt against IRF and Mr. Arndt for failing to comply with the 2014 Consent Agreement, citing the fact that the Vessel had not been moved.

42.    On June 26, 2017, the Court issued an order granting IRF eight weeks (until August 21, 2017), to remove the Vessel from its current location at 0 Bucknam Road to a location outside of Freeport or to a conforming location within the Town of Freeport.

43.    A failure to move the Vessel would result in a fine of $500 dollars per day.

44.    The Court explicitly did not prevent IRF and Mr. Arndt from continuing to work on the Vessel, applying for permits necessary to launch the Vessel, and for arranging transport with any necessary contractor or equipment, or for making any necessary arrangements with any utility to allow transport.

45.    The Court directed Mr. Arndt and IRF to promptly discuss with the Town the possibility of moving the Vessel (which for this purpose could be moved in its current condition

without any additional work) to a conforming location within the Town rather than attempting to arrange for launching at that time. It suggested a site on Burnette Road, approximately three road miles from the Vessel's location.

46. The Court ordered the Town to "provide the Foundation with possible conforming locations."

47. The day the June 2017 order was issued, Mr. Arndt emailed the Town Manager and requested a meeting to discuss "conforming locations."

48. On July 1, 2017, Mr. Arndt sent a follow-up email, requesting a meeting with the Town.

49. Rather than find a time to confer and discuss conforming locations, the Town Manager asked its Codes Enforcement Officer whether and to what extent "commercial vessels" could be manufactured and stored within the Town of Freeport. The Town Manager conveyed this information to Mr. Arndt and provided no further response to Mr. Arndt's request for a meeting.

50. There was no evidence in the record that describes the *Island Rover* as a commercial vessel or a "commercial boat," but this nonetheless provided the basis for the Town not seeking to come to a solution.

51. Mr. Arndt attempted to meet with the Freeport Town Manager for possible conforming locations multiple times but was not granted his request for a meeting.

52. In August 2017, IRF and Mr. Becker had completed to the hull of the *Island Rover* to the point that it was stable and moveable.

53. On August 21, 2017, IRF and Mr. Becker hired a specialized crew to move the Vessel off Lot 30, Map 5 into the middle of Bucknam Rd., a private right-of-way that was and is not currently utilized by any other residents, repositioning the Vessel 100 feet from its original

8

location and 90-degrees from its original orientation, sitting in the middle of and facing directly down the private right-of-way toward Byram Ave.

54.    On September 25, 2017, after finishing the welding, sandblasting, and painting of the hull, IRF, Mr. Arndt, and Mr. Becker completed the hull to the point that it is water-tight and launchable.  IRF communicated the hull's completion to the American Bureau of Shipping the following day.

55.    On September 19, 2017, the Court granted Mr. Becker's motion to intervene on the record at a hearing.

56.    In the Fall of 2017, Mr. Arndt and IRF retained counsel, undersigned Twain Braden.

57.    On October 10, 2017, the Court held that the contempt was not purged because the Vessel, while moved from its original location, remained in the same residential zone.

58.    Notwithstanding the adverse finding, Mr. Arndt, IRF, Mr. Becker, and Falls Point continued their attempts to move and launch the Vessel, which required, according to the Town, an application for an "overlimit" permit to move the Vessel to a launch site. *See* Freeport, Me., Street Regulation Ordinance §§ 1(A), 4(A).

59.    The Town denied the applicants' overlimit permit application on November 2, 2017, that would have allowed the Vessel to be transported to the three proposed launch sites in Freeport.

60.    The Town told the parties that it would not provide an overlimit permit unless the neighbors provided advance permission for them to use the road and boat ramp. By conditioning the overlimit permit on advance permission, this eliminated any incentive for shoreside neighbors to actually meet with the Defendants, effectively handing them veto power over the project.

61.    Despite several offers and overtures to initiate discussions and even mediation, the neighbors rejected any offer or proposal to come to a solution that would allow the launching of the Vessel in these various shoreside locations.

62.    The Court issued an order on July 3, 2018, rejecting the argument that the Town had frustrated IRF's efforts to purge itself of contempt, but it did not rule on what options, if any, the ownership parties had to move and launch the Vessel and, in the process, purge themselves of contempt.

Concurrent Legal Action

63.    On January 31, 2017, the Town filed a complaint for Declaratory Judgment in a separate lawsuit against IRF, Mr. Arndt, and Mr. Becker, asking the Court to declare the Town's ownership of the Vessel and the Property on which it sits.

64.    On August 16, 2018, the Town amended its complaint to include a claim under the Maine Uniform Fraudulent Transfer Act based on what it alleged was a "fraudulent transfer" (partial title of the Vessel and a mortgage on the land) between Mr. Arndt, IRF, and Mr. Becker.

65.    This matter remains pending and has been stayed numerous times by the Court to give the parties sufficient time to move and launch the Vessel.

Application to the Town's Coastal Waters Commission

66.    Notwithstanding several denials by the Town Council to move the Vessel over the roads, the Vessel ownership parties continued to develop plans to move and launch the Vessel. In early 2023, IRF and Carter Becker proposed to construct a temporary boat launch on 0 Shore Drive, a property owned by Mr. Becker, to launch the Vessel.

67. Such a plan would potentially require permission from: The Town Council (overlimit permit); the Town's CEO (for a permit to build a temporary launch structure "accessory to a dwelling"); the Town's Project Review Board (for a 20-foot strip of land on Mr. Becker's property that might require grading and minor tree removal); the Town's Coastal Waters Commission (for constructing a temporary launch platform between the Highest Annual Tide ("HAT") line and the low-water line; the Maine Department of Environmental Protection (for concurrent jurisdiction with the CWC over the HAT / low-water area); and the United States Army Corps of Engineers (for passage into the navigational waterways).

68. In March 2023, the Town, Mr. Arndt, and Mr. Becker attended a mediation with the Town, presided over by Retired Justice Robert Crowley.

69. A tentative settlement agreement was reached at the mediation.

70. At its subsequent Town Council meeting, the Town rejected the proposed settlement agreement.

71. Mr. Becker submitted this proposal to the Town of Freeport's Coastal Water's Commission ("CWC") on June 8, 2023, which reviewed the portion of the proposal that covered the launching of the Vessel from the high tide line through the mud flats.

72. Mr. Becker's application to the CWC proposed a series of crane mats fastened together and placed on top of geotextile fabric to create a specially engineered 110-foot temporary boat launch, which would be removed after the launch of the Vessel. A true copy fit to scale of the Launch Proposal made to the CWC is attached hereto as **Exhibit D**. Plaintiffs' Counsel has full size versions of Exhibit D available if needed.

73. The proposal included a restoration plan that provided that any temporary damage to the salt marsh and mud flats would be remediated.

11

74.    After a two-plus-year administrative process, which cost Mr. Becker and Mr. Arndt tens of thousands of dollars in engineering and other professional fees and costs, and involving a site visit by the CWC to Mr. Becker's property and several public hearings, on September 15, 2025, the CWC denied Mr. Becker and IRF's proposal to launch the Vessel based on a finding that the CWC did not have sufficient information that the project will not cause water quality and other coastal resources to be degraded.

75.    This matter is subject to a pending 80B appeal by Mr. Becker.

76.    The Vessel remains in its current position in the middle of the private right-of-way on Lower Flying Point.

77.    Mr. Arndt and Mr. Becker have made every reasonable effort to comply with the law and with the Town's demands to move the Vessel subject to its myriad of ever-changing demands.

78.    Notwithstanding Mr. Arndt's and Mr. Becker's efforts, the Town, through its elected and appointed officials and notwithstanding the Town's written and oral representations and obligations to cooperate, has prevented them from lawfully moving the Vessel.

## Causes of Action

### Count I
### Regulatory Taking/Inverse Condemnation
### (U.S. Const. Amend. V, XIV; Maine Const. art. I, § 21; 42 U.S.C. § 1983)

79.    Plaintiffs hereby repeat and reallege each allegation contained in the paragraphs above as fully set forth again here at length.

80.    Plaintiffs possess constitutionally-protected property interests, including but not limited to their ownership, use, enjoyment, and investment-backed expectations in: (a) real property located at or associated with 0 Bucknam Road, Freeport, Maine; and (b) the *Island Rover*.

12

## A. No Rational Basis for Towns Regulatory Actions

81.    The Town's techniques and methods of land use regulation, moving of goal posts, land use actions; the Town's arbitrary and capricious administrative requirements; and the Town's refusal to cooperate with IRF and Mr. Arndt constitute irrational regulation, which does not support a valid public purpose.

82.    The stated reasons for the decision of Town officials were pretextual and not made in good faith.

83.    Town's actions were not designed to, and did not, substantially advance legitimate State or Town interests, and lack rational basis.

## B. *Per Se* Taking of Plaintiffs' Property, by Denying All Use and Benefit

84.    The Town, acting under color of state law and pursuant to official municipal policy, practice, and custom have deprived Plaintiffs of all use and enjoyment of their property the *Island Rover*, including, but not limited to, the right to develop, launch, and sell any portion of such property.

85.    The Town's actions in denying Plaintiffs all use, enjoyment and benefit of their real property amount to a categorical taking of Plaintiffs' property by the Town.

## C. *Penn Central* Balancing

86.    The Town's regulatory actions taken herein, to the present, are supported by little, if any, valid public purpose, whereas the burden imposed upon Plaintiffs has been oppressive and devastating; thus, constituting a regulatory taking of Plaintiffs' property without just compensation under the teachings of the U.S. Supreme Court in *Penn Central. See Penn Central Transp. Co. v. New York City*, 438 U.S. 104 (1978).

87.    The Town has denied permits and applications or made permits effectively impossible to obtain, frustrating any attempt for the IRF or Mr. Arndt to purge themselves of contempt of a 2014 Court order.

88.    Together, the consistent denial of permits and applications unconstitutionally deprives Plaintiffs' of their ownership, use, and enjoyment of their own property.

89.    The Town's continued litigation (and threat of litigation) against IRF and Mr. Arndt has harmed them by causing contractors, investors, donations, and volunteers to give up the project, significantly slowing the pace of completion of the Vessel.

90.    Hold harmless letters issued by the Town in the Summer of 2014 induced Carter Becker and Falls Point Marine to invest hundreds of thousands of dollars towards launching the Vessel, only to subsequently obstruct any effort and deny any permit Mr. Becker, IRF, and Mr. Arndt have put forward for launching the Vessel.

91.    The Town has shifted the goal posts of what is required on IRF and Mr. Arndt throughout this extended litigation.

92.    The Town's actions have contravened a court order and the 2014 consent judgment that required the Town "to provide technical support with regard to any permitting issues that may arise and, to the extent allowed by law will support any permitting applications necessary for third party permits such as the Department of Environmental Protection, Department of Marine Resources or the Department of Transportation or other third parties."

93.    When required by the Court to cooperate with Mr. Arndt and IRF, the Town never seriously engaged in any effort to meet and discuss launching the *Island Rover*.

94.    As a result, the Town never in good faith complied with the court order to cooperate with IRF and Mr. Arndt to launch the Vessel.

95. The Town has been amassing significant and substantial penalties from the Plaintiffs while hindering any effort of the Plaintiffs to purge the contempt.

96. This includes fines of $500 dollars per day since at least July 3, 2018.

97. The ever-shifting reasons for preventing the launch of the Vessel are strongly probative of pretext and a predetermined conclusion to thwart efforts to comply with the law.

98. Accordingly, the Town reaps financial benefit directly from its denial of permits and its efforts to frustrate the launching of the *Island Rover*.

99. In balancing the Town's legitimate interest against the legitimate interests of the property owner, the balance clearly indicates that the Town has taken Plaintiffs' property.

100. By constantly and unreasonably shifting the goal posts, continuing to this day, the Town has deprived Plaintiffs of all economically viable use of their property on a temporary and permanent basis.

101. The Town's cumulative actions amount to a regulatory taking under the 5th and 14th Amendments of the United States Constitution and Article 1, § 21 of the Maine Constitution, in that those actions had little, if any, valid public purpose, whereas the burden imposed upon Plaintiffs has been oppressive and devastating; thus, constituting a regulatory taking of Plaintiffs' property without just compensation.

102. The Town's actions have created a regulatory scheme that violates the holding of *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922), namely, that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."

103. Moreover, under the teachings of *Penn Central* and subsequent cases, the Town's actions have so frustrated distinct investment-backed expectations as to amount to a taking of property.

104.    Upon information and belief, the Town was aware that their conduct violated, and was designed to violate, Plaintiffs' civil rights.

105.    The Town's actions have caused Plaintiffs substantial damages, including the destruction of investment-backed expectations, economic loss, accrued fines, loss of project value, and loss of use and enjoyment.

106.    Plaintiffs seek just compensation for takings of property and for impairment of Plaintiffs' property interest, use, and enjoyment.

107.    Plaintiffs seek declaratory relief that the conditions and regulatory scheme imposed by the Town and the Town's actions are and have been unconstitutional.

108.    Plaintiffs seek injunctive and equitable relief to prohibit the continued enforcement and the conditions that have led to this impairment and taking of the Plaintiffs' property, interest, use, and enjoyment.

**Count II**
**Denial of Equal Protection of the Law**
**(U.S. Const. Amend XIV; 42 U.S.C. § 1983; Maine Const. art. I, § 6-A)**

109.    Plaintiffs hereby repeat and reallege each allegation contained in the paragraphs above as fully set forth again here.

110.    Upon information and belief, the Defendant Town and its officials disparately and intentionally treated and singled out Plaintiffs for adverse treatment regarding its efforts to build and launch the *Island Rover*.

111.    The Town has thereby denied Plaintiffs equal protection of the law, actionable under the U.S. Supreme Court's "class of one" jurisprudence even if no suspect class discrimination is established.

112. In particular, on numerous occasions, the Defendant Town has treated Plaintiffs in a manner distinctly different from other landowners, ship owners, and permit applicants in the Town.

113. For example, the Town has treated Plaintiffs different from other overlimit permit applicants when it has made its overlimit application process contingent on Plaintiffs first securing boat launch access and neighbor approval.

114. The Town's repeated and ongoing adverse treatment towards Plaintiffs has singled them out for abusively arbitrary and unfair treatment, with the apparent intent of preventing Plaintiffs from launching the *Island Rover* while simultaneously causing Plaintiffs to accumulate substantial contempt fines.

115. Defendants' actions were motivated by bias, hostility, and/or improper animus toward Plaintiffs and Plaintiffs' project and were implemented through pretextual enforcement decisions and procedural obstacles designed to block Plaintiffs' ability to lawfully move and launch the *Island Rover*.

116. The Town's conduct towards the Plaintiffs has been so abusive and patently arbitrary as to shock the conscience.

117. Defendants' disparate treatment of Plaintiffs lacks any rational basis and instead reflects arbitrary and unfair governmental action intended to burden Plaintiffs uniquely.

118. The Town has deprived Plaintiffs of the equal protection of the law, in violation of the United States Constitution and the Constitution of the State of Maine.

119. As a direct and proximate result, Plaintiffs have suffered substantial damages and are entitled to declaratory and injunctive relief, compensatory damages, and attorney's fees pursuant to 42 U.S.C. § 1988.

120.    Plaintiffs respectfully request damages, attorney's fees, equitable relief, and all other relief that may be available.

121.    Plaintiffs seek declaratory relief that the conditions imposed by the Town and the Town's actions are and have been unconstitutional.

## Count III

### Denial of Due Process of Law (Procedural and Substantive)
### (U.S. Const. Amend XIV; Maine Const. art. I, § 6-A; 42 U.S.C. § 1983)

122.    Plaintiffs hereby repeat and reallege each allegation contained in the paragraphs above as set forth again here.

123.    Plaintiffs hold constitutionally protected property interests, including but not limited to their interests in land, the *Island Rover*, and the ability to seek and obtain land use and permitting approvals on fair and lawful terms.

### A. Procedural Due Process

124.    Defendants deprived Plaintiffs of property interests without constitutionally adequate process.

125.    Defendants' actions included (among other things) decision-making processes that were arbitrary, inconsistent, biased, infected with improper motives, and structured to ensure denial regardless of compliance—thereby depriving Plaintiffs of a fair and meaningful opportunity to be heard.

126.    Plaintiffs have been thereby damaged.

### B. Substantive Due Process

18

127.    Upon information and belief, there was no legitimate basis for denying Plaintiffs permit proposals, or bringing this enforcement action, upon any legitimate health, safety or public welfare basis.

128.    Plaintiffs have committed substantial time and assets to the development and building of their property.

129.    Upon information and belief, the Town's denial of every effort to allow Plaintiffs to enjoy and make use of their property has been improperly and maliciously motivated, involving an intentional, long-term effort to deprive Plaintiffs of their ability to reasonably use their property.

130.    Plaintiffs have satisfied the two-prong test for establishing a substantive due process claim since: (1) Plaintiffs have a valid property interest entitled to constitutional protection, and (2) the deprivation of the valid property interest was so outrageously arbitrary as to be a gross abuse of governmental authority.

131.    Here, Plaintiffs have a valid property interest in using and enjoying their property the *Island Rover* and the real estate on which it sits.

132.    Through administrative obstacle-creation, the Town has deprived Plaintiffs of any and all use or benefit of their property, while simultaneously preventing the Plaintiffs from curing their contempt, and exacting substantial costs on the Plaintiffs.

133.    The method and manner of the Town's actions are "so outrageously arbitrary as to be gross abuse of governmental authority."

134.    The Town's conduct is malicious and improperly motivated.

135.    As a result of the Town's actions, Plaintiffs have lost their investment, accumulated substantial contempt fines, suffered numerous and costly permit denials, and the emotional distress caused by the financial problems created by the Town's actions.

19

136.    Plaintiffs have been thereby damaged.

137.    Plaintiffs respectfully request damages, attorney's fees, equitable relief, and all other relief that may be available.

138.    Plaintiffs seek declaratory relief that the conditions imposed by the Town and the Town's actions are and have been unconstitutional.

## Count IV
## Equitable Estoppel

139.    Plaintiffs hereby repeat and reallege each allegation contained in the paragraphs above as set forth again here.

140.    A municipality may be equitably estopped because a person has changed their position in reasonable and detrimental reliance upon the issuance of a permit approval or conduct of a public official. *See City of Auburn v. Desgrossilliers*, 578 A.2d 712 (Me. 1990); *F.S. Plummer Co., Inc. v. Town of Cape Elizabeth*, 612 A.2d 856 (Me. 1992); *Burton v. Merrill*, 612 A.2d 862 (Me. 1992); *H.E. Sargent v. Town of Wells*, 676 A.2d 920 (Me 1996).

141.    Town's actions, specifically consent agreements, hold harmless letters, and promises of support have induced Plaintiffs, supporters, and interested parties to invest substantial money and labor to complete the hull and launch the Vessel.

142.    The reliance of Plaintiffs, supporters, and interested parties was reasonable.

143.    Town's subsequent enforcement actions, following the completion of the hull of the Vessel, such as its pursuit of contempt actions, its denial of overlimit permits, its denial of launch access, and its denial of Plaintiffs' application for a proposed temporary launch have inequitably injured Plaintiffs.

144.    Plaintiffs respectfully request that this Court order, in light of the doctrine of equitable estoppel, that the Town is precluded from pursuing its enforcement and contempt actions against Plaintiffs and from further hindering Plaintiffs' efforts to launch the Vessel.

## Count V
### Declaratory Judgment
### Violation of the 2014 Settlement Agreement

145.    Plaintiffs hereby repeat and reallege each allegation contained in the paragraphs above as fully set forth herein.

146.    An actual, substantial, and justiciable controversy exists between Plaintiffs and Defendants concerning the meaning, validity, and enforcement of the September 2, 2014 settlement agreement approved by the Superior Court, including the MOA and SMOA.

147.    Under the 2014 Settlement Agreement, the Town agreed, among other things, to cooperate with and support Plaintiffs' permitting efforts, including by providing technical support and support for permitting applications necessary for third-party approvals, to the extent allowed by law.

148.    Despite those obligations, Defendants have repeatedly acted contrary to the 2014 Settlement Agreement by obstructing Plaintiffs' efforts, denying permits on pretextual grounds, shifting requirements, refusing to cooperate in good faith, and otherwise engaging in conduct that has prevented Plaintiffs from achieving lawful compliance and completion of the vessel's launch.

149.    Defendants' ongoing conduct constitutes a violation of the Town's obligations under the 2014 Settlement Agreement and Order.

150.    Plaintiffs are entitled to a declaratory judgment declaring that Defendants have violated the 2014 Settlement Agreement and that Defendants must comply with their obligations under that agreement consistent with its terms and the purposes for which it was approved.

21

## JURY DEMAND

Plaintiff hereby demands trial by jury on issues so triable.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter judgment declaring that the Town has violated Plaintiffs' constitutional rights, it has imposed an unconstitutional regulatory scheme, and it has violated the terms of the 2014 Settlement Agreement. Plaintiffs further request and that this Honorable Court grant just compensation for the unconstitutional taking of Plaintiffs' property, order that the Town is precluded from continuing to purse its enforcement and contempt actions against Plaintiffs, and prohibit the Town from further hindering Plaintiffs' efforts to launch the Vessel. Plaintiffs respectfully request damages, attorney's fees, equitable relief, and all such other relief as is necessary and just.

DATED at Portland, Maine this 2nd day of February, 2026.

Twain Braden (Bar No. 5083)

Colin Hull (Bar No. 11425)
Attorneys for the Plaintiffs
ARCHIPELAGO
1 Dana Street, 4th Floor
Portland, ME 04101
(207) 558-0102
tbraden@archipelagona.com
chull@archipelagona.com

22