UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HAROLD E. ARNDT  *and*                          )
                                                )
ISLAND ROVER FOUNDATION,                        )
                        *Plaintiffs*,           )          Civil Case No.: 2:26-cv-00117-JCN
                                                )
        v.                                      )
                                                )
TOWN OF FREEPORT,                               )
                        *Defendant*.            )

Pursuant to Fed. R. Civ. P. 12(b)(6), the Town of Freeport (the "Town"), by and through its

undersigned counsel, hereby submits its Motion to Dismiss the Complaint (the "Motion") filed by

Plaintiffs Harold E. Arndt ("Arndt") and Island Rover Foundation ("IRF," and with Arndt,

"Plaintiffs"). In support of its Motion, the Town further states as follows:

**PRELIMINARY STATEMENT**

This action arises out of Plaintiffs failure to comply with the terms of a 2014 Consent Order

that required them to move a large vessel called the Island Rover to a conforming location within

the Town or outside of the Town.  To this day, Plaintiffs have failed to move this vessel as required

by the September 9, 2016 deadline under the 2014 Consent Order.  Now, nearly ten years after

their failure to comply with 2014 Consent Orders, Plaintiffs assert a raft of claims arising under

the U.S. Constitution, federal law, and other authority under this Court's supplemental jurisdiction.

For the reasons described below, this Court should dismiss all of Plaintiffs' claims.

**FACTUAL BACKGROUND**

Pursuant to a 2014 Consent Order dated September 2, 2014 ("2014 Consent Order")

referenced by Plaintiffs but attached only in part to their Complaint, Harold E. Arndt and IRF

agreed that they could cause the Island Rover vessel (the "Vessel") to moved "to a site outside of

the jurisdiction of the Town of Freeport or a conforming site within the Town of Freeport on or

1

before September 9, 2016." Consent Order, CV-14-28, at part Ex. A thereto p. 1. A copy of the 2014 Consent Order (with *all* exhibits) is attached hereto as **Exhibit 1**.

Under the 2014 Consent Order, Plaintiffs provided security for their performance comprised of: 1) security in real property owned by the IRF located at 0 Bucknam Road (the "Real Property"); and 2) security in the Vessel itself, which Plaintiffs represented was owned by the IRF. **Exhibit 1** at Ex. A thereto, ¶2, and Ex B thereto, ¶1-2. Specifically, a Deed to the Real Property was executed by IRF and held in escrow by mediator, Hon. John David Kennedy (the "Mediator"). It was to be released to the Town only in the event of default by Plaintiffs under the 2014 Consent Order. *Id*. In addition, a Bill of Sale for the Vessel from Island Rover to the Town was to be held in escrow by the Mediator and to be released to the Town only in the event of default by Plaintiffs under the 2014 Consent Order. *Id*. These conveyances were "self-executing without need for further action by the Town or Counsel or the Court if either of the final deadlines or the benchmarks subsequently agreed to are not met." **Exhibit 1** at Ex. A thereto, ¶2; *see* Complaint, ¶31 (alleging that the Memorandum of Agreement within the 2014 Consent Order "gave the Town a recordable security interest in the land on which the Vessel sat and a UCC interest in the Vessel itself that would be self-executing.")

**Real Property.** As admitted by Plaintiffs, Arndt and IRF did not cause the Vessel to be moved to a different jurisdiction or to a conforming location in the Town by September 9, 2016. Complaint, ¶39. Because Plaintiffs were in default and in violation of the 2014 Consent Order, ownership of the Real Property and the Vessel were transferred to the Town under the 2014 Consent Order. The Town has recorded its Deed to the Real Property in the Cumberland County Registry of Deeds, a copy of which is attached here as **Exhibit 2** (the "Town's Deed"). The Town owns the Real Property, despite Plaintiffs unsupportable claims that *both* Plaintiffs own it.

**Vessel.** Regarding the Vessel, Plaintiffs have not delivered an executed Bill of Sale to the Town, despite the self-executing nature of the Town's interest in the Vessel in the event of default. *See* Complaint, ¶31 (alleging that the Memorandum of Agreement within the 2014 Consent Order "gave the Town a recordable security interest in the land on which the Vessel sat and a UCC interest in the Vessel itself that would be self-executing."). Instead, Plaintiffs have sought to create a cloud on title to the Vessel by asserting that Arndt, individually, and not IRF, was the owner of the Vessel, or now in this action, that both Plaintiffs own the Vessel.

**Contempt**. By Order dated June 26, 2017 in PORSC-CV-14-28, IRF was found in contempt of the 2014 Consent Order by failing to timely move the Vessel to a conforming location. A copy of the Court's Contempt Order dated June 26, 2017 (the "06/26/17 Contempt Order") is attached hereto as **Exhibit 3** and judicial notice is requested. *See* Complaint, ¶41-44.  In the 06/26/17 Contempt Order, the Court noted that the Town proved that "IRF took action to frustrate the security interests that were given to the Town under paragraph 2 of the Memorandum of Agreement dated June 26, 2014 and paragraphs 1 and 2 of the Supplemental Memorandum of Agreement dated August 21, 2021."  In that 06/26/17 Contempt Order, the Court also noted that "IRF now claims the Island Rover vessel is not actually owned by IRF" but stated that this new assertion was inconsistent with the terms of the Bill of Sale, as well as the terms of the 2014 Consent Agreement. **Exhibit 3** at p. 2-3. The Court also found that a lack of any "realistic prospect that IRF will obtain approval for the launching site for which it has applied[]," while also finding, by clear and convincing evidence, that "IRF does have the ability to remove the hull by cutting it up and disposing of the pieces as scrap." *Id*. at p. 4-5.

**Sanctions**. On June 30, 2017, the Superior Court in CV-14-28 entered an additional order addressed to remedial sanctions against IRF (the "06/30/17 Remedial Sanctions Order"). A copy

of the 06/30/17 Remedial Sanctions Order is attached hereto as **Exhibit 4** and judicial notice is hereby requested. *See* Complaint, ¶42 (referencing 06/30/17 Remedial Sanctions Order, but misdating it as 06/26/17).  In that Order, the Court provided an additional 8 weeks, until August 21, 2017, for IRF to purge itself of contempt by moving the Vessel to a conforming location. This Order imposed fines of $500 per day after August 22, 2017 until: a) IRF moved the Vessel to a conforming location; or *b) IRF "authorizes the Town of Freeport to have access to the vessel, take possession of it, to move the vessel, or to scrap the vessel as the Town may decide in its discretion."* **Exhibit 4** at p. 1-2.  Neither condition has been met, as admitted by Plaintiffs in the Complaint (including IRF's ability to purge itself of contempt under subsection b) referenced above). Complaint, ¶¶57, 58.  Under the June Contempt Orders, IRF was found to have the ability to move the Vessel to a conforming location by dismantling the Vessel and also was given the opportunity to purge itself of contempt by surrendering possession of the Vessel to the Town, but it has not pursued these options. **Exhibit 3**, at  p. 4-5, **Exhibit 4**, at p. 2-3.  The 06/30/17 Remedial Sanctions Order noted a request for a permit (which may or may not be granted) and will be opposed by the neighbors (who can appeal any permit that is granted) was "unrealistic and would ignore the deadlines in the Consent Order and the court's finding of contempt." **Exhibit 4**, ¶7,  p. 3.

**Encumbrances Near 2016 Deadline for Performance**. Notwithstanding the self-executing nature of the Town's interests in the Real Property and the Vessel in the event of default or breach under the 2014 Consent Order, Complaint, ¶31, IRF and Arndt have introduced uncertainty in relation to the status of the Real Property and the Vessel.  Regarding the Real Property, the Town is the owner, as reflected in the Town's Deed released by the Mediator and filed in the Registry of Deeds on December 5, 2016, Book 33665, Page 147-148.  *See* **Exhibit 2** (the Town's Deed).  However, just prior to this recording, IRF granted a mortgage to Carter Becker,

individually, in the Real Property to secure payment of $250,000, as reflected in the Mortgage filed in the Registry of Deeds on December 2, 2016, Book 33657, Page 126-127, a copy of which is attached hereto as **Exhibit 5** (the "IRF-Becker Mortgage"); *see also* Complaint, ¶38 (referencing the same).  The implication is that although the Town is the owner of the Real Property, it is subject to the mortgage granted by IRF to Carter Becker, which, if valid, could have the effect of reducing the Town's equity of the Town.[1] Notwithstanding any mortgage by a third party who is not a Plaintiff, the Town's Deed is conclusive evidence of its ownership of the Real Property.

Regarding competing claims on the Vessel, IRF on June 6, 2016 granted a security interest in the Vessel to Falls Point Marine, Inc., an entity for which Carter Becker is an owner.  A copy of the UCC-1 document granting a security interest in the Vessel to IRF is attached hereto as **Exhibit 6** (the "IRF-FMP UCC-1"). *See also* Complaint, ¶38 (referencing the same).  However, Arndt has taken the position that Arndt, individually, and not the IRF, was the owner of the Vessel all along and that Arndt, individually, transferred 75 percent of the Vessel to Carter Becker individually. A copy of a Bill of Sale from Harold Arndt to Carter Becker dated 09/05/16 or 09/08/16 submitted to the U.S. Coast Guard is attached hereto as **Exhibit 7** (the "Arndt-Becker Bill of Sale"). *See* Complaint, ¶38 (referencing the same). These encumbrances and attempted clouds on ownership are the subject of CV-17-58, which is slated for trial in the spring of 2026.  In this action, both Plaintiff now claim an ownership interest in the Vessel. *But see* **Exhibit 1** (2014 Consent Order).

---

[1] At present, a civil action involving Plaintiff, the Town, and Defendants Arndt, IRF, Carter Becker, and Falls Point Marine, Inc., PORSC-CV-17-58, is pending in the Cumberland County Superior Court addressing fraudulent transfer and other claims concerning the timing and propriety of encumbrances and claims addressed to the Real Property and the Vessel at or near the deadline of September 9, 2016 to attempt to place value out of the reach of the Town following default or breach under the 2014 Consent Order. This state court action was scheduled for a bench trial in the spring of 2026.  Plaintiffs Arndt and IRF sought to consolidate their new 2026 action (removed to this Court) with the CV-17-58, potentially delaying trial in CV-17-58.  With removal to federal court, consolidation has become moot.

**Failure to Purge Contempt**.  On October 10, 2017, the Superior Court in CV-14-28, found that IRF did not purge its contempt under the 2014 Consent Order and pursuant to the 06/30/17 Remedial Sanctions Order.  In that Order, the Court referenced previous Consent Orders from 2005 and 2010 in which IRF admitted that it was impermissibly engaged in the manufacture of the Vessell where not permitted in the MDR-1 Zone.  A copy of this Order (the "10/10/17 Continuing Contempt Order") is attached hereto as **Exhibit 8** and judicial notice is requested.  *See also* Complaint, ¶¶12-18 (referencing both 2005 and 2010 Consent Agreements). In the 10/10/17 Continuing Contempt Order, the Court found that the IRF's movement of the Vessel from 0 Bucknam Road to a private right of way approximately 100 feet from 0 Bucknam Road did not purge contempt because the Vessel still remained within the MDR-1 zone, the same impermissible zone at the start of CV-14-28. **Exhibit 8** at p. 1-2.  The Court also gave the Town the option "to seek an order allowing it to take possession of the vessel in order to allow the Town itself to either move or scrap the vessel," and to seek a compensatory fine to cover costs and fees. *Id*. at p. 4.

**Compensatory Fine**. On July 3, 2018, the Superior Court ordered a compensatory fine against the IRF in the amount of $36,331.42, without prejudice to additional compensatory fines for future attorney's fees or other expenses.  A copy of this order (the "07/03/18 Attorney Fee Order") is attached hereto as **Exhibit 9**. *See also* Complaint, ¶62 (referencing same). In the 07/03/28 Attorney Fee Order, the Court stated: "[t]he Court does not accept the arguments made by the Foundation and by Becker that the Foundation's attempts to purge itself of contempt have been improperly frustrated by the Town.  If the Town's denial of an over-limit road permit was invalid, Becker and the Foundation could have appealed that decision.  They did not do so.  The Town is not responsible for the opposition of landowners at the proposed launch site. If those landowners do have a legal basis to oppose Becker's proposed launching plan, Becker can seek

legal recourse. It is significant that he had not done so." *Id.* at p. 2. The Court also found that compliance with the 2014 Consent Order "can be met by disassembling the hull and disposing of it as scrap or reassembling it [at] another location. *Id.* The Court also invited briefing on the format for a coercive fine of $500 per day, and whether it would be more productive to explore payment to the Town, instead of the State. The 07/03/18 Attorney Fee Order states that "[i]n the meantime, the court shall stay the imposition of a coercive fine." *Id.* at ¶ 9, p. 4.

**Plaintiffs' Complaint.** Plaintiffs assert constitutional and other claims against the Town, listing "Carter Becker and Falls Point Marine" as parties-in-interest on only the cover sheet to their filing, but not as parties-in-interest or plaintiffs on the Complaint itself. Complaint, ¶¶1-3 and caption.[2] **Count I** sets forth a claim asserting a "Takings," regulatory taking, and inverse condemnation under the U.S. Constitution, Amendment V, XIV and the Maine Constitution, art. I, §21 and 42 U.S.C. § 1983.[3] **Count II** sets forth a denial of Equal Protection claim under U.S. Const. Amend XIV, 42 U.S.C. § 1983, Maine Const. art. I, § 6-A.[4] **Count III** sets forth a claim asserting a denial of Due Process claim under U.S. Const. Amend XIV, , Maine Const. art. I, § 6-

---

[2] To the extent that Plaintiffs seek to rely upon the encumbrances and transfers set forth in **Exhibits 5, 6, and 7** hereto, Becker and Falls Point Marine, Inc. are necessary parties. To state the obvious, Plaintiffs may only assert their own claims and may not assert those of others.

[3] The scope of the takings clause of the Maine Constitution has generally been interpreted as coextensive with the takings clause of the U.S. Constitution, so that state courts may properly consider federal case law when applying the Maine Constitution. *Madden v. Inhabitants of the Town of Frankfort*, 2012 WL 9189533, at *5 (Me.Super. Sep. 26, 2012), citing and quoting *Bell v. Town of Wells*. 557 A.2d 168, 177 (Me. 1989) (stating, "[o]ur analysis and conclusion are the same under both Constitutions."); *see also Anthem Health Plans of Maine, Inc. v. Superintendent of Ins.*, 2011 WL 4528130, at *11 (Me.B.C.D. Aug. 29, 2011) (using federal standards to analyze takings claims asserted under both federal and state law).

[4] This Court has found that the "protections of the federal and Maine equal protection clauses are coextensive," and therefore has analyzed state and federal equal protection claims together. *Khaqan v. Town of Bucksport*, 2024 WL 691445, at *8 (D. Me. Feb. 20, 2024), quoting *Beaulieu v. City of Lewiston*, 440 A.2d 334, 338 n.4 (Me. 1982).

A, 42 U.S.C. § 1983.[5]  **Count IV** sets forth a claim based on Equitable Estoppel.  **Count V** seeks a Declaratory Judgment seeking a declaration that the Town is in breach of the 2014 Consent Order because it assertedly failed to cooperate with Plaintiffs' permitting applications and has allegedly obstructed Plaintiffs efforts or denied permit requests on pretextual grounds.

**Broadly Asserted Property Interests**. Plaintiffs allege that both Arndt and the IRF possess constitutionally protected property interests, including, but not limited to their "ownership, use, enjoyment and investment-back expectations in: (a) real property located at or associated with 0 Bucknam Road, Freeport, Maine, and (b) the *Island Rover*." Complaint, ¶80.  They allege that the Town has deprived them of "all use, and enjoyment of their property the *Island Rover,* including, but not limited to, the right to develop, launch, and sell any portion of such property." Complaint, ¶80.  They allege that the Town's actions in denying Plaintiffs all use, enjoyment and benefit of their real property amount[s] to a taking of the Plaintiffs' property by the Town, or regulatory taking by the Town. Complaint, ¶¶85, 86. Specific factual allegations from Plaintiffs' Complaint that are tied to specific claims will be addressed below.

### LEGAL STANDARDS

When evaluating a motion to dismiss under Rule 12(b)(6), the Court engages in a two-step analysis. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Id.* Second, taking the well-pleaded factual content as true and drawing all reasonable inferences in the plaintiff's favor, the Court must determine whether the complaint plausibly narrates a claim for relief. *See Ocasio-Hernández v.*

---

[5] As the "protections of the federal and Maine due process requirements are also coextensive," a Court analyzes such due process claims together. *Khaqan v. Town of Bucksport*, 2024 WL 691445, at *9 (D. Me. Feb. 20, 2024) quoting *Northup v. Poling*, 2000 ME 199, ¶ 9 n.5, 761 A.2d 872.

*Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (discussing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).[6] On a motion to dismiss, the Court may consider the Complaint, as well as documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint. *Mayhew v. IDEXX Lab'ys, Inc.,* 2025 WL 2021786, at *3 (D. Me. July 18, 2025); *Alt. Energy, Inc. v. St. Paul Fire & Marine*, 267 F.3d 30, 33 (1st Cir. 2001)

## LEGAL ARGUMENT

### I.    The Statute of Limitations Bars Plaintiffs' Claims for Relief.

The general statute of limitations for most civil claims under Maine law is six years. 14 M.R.S. § 752. However, a person aggrieved by government action or inaction, including local board decisions, generally must appeal within 30 days of the government action (45 days for certain board of appeals decisions).[7] Plaintiffs' Complaint rests on generalized statements and

---

[6] On a motion to dismiss, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Khaqan v. Town of Bucksport*, 2024 WL 691445, at *7 (D. Me. Feb. 20, 2024) (citations and quotations omitted). "'If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' dismissal is proper." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotations omitted)). If the factual allegations in the complaint are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' dismissal is proper." *Alston*, 988 F.3d at 571 (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)). The Court must "eschew any reliance on bald assertions, unsupportable conclusion, or opprobrious epithets" *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987) (citations and quotations omitted); *Khaqan*, 2024 WL 691445, at *10-11. Courts need not credit a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

[7] *See* 30-A M.R.S. § 4482-A ("A party may file an appeal with the Superior Court of a municipal land use decision subject to this section that is a final decision within 30 days of the date of the vote on the final decision."); 30-A M.R.S. § 2691 ("Any party may take an appeal, within 45 days of the date of the vote on the original decision, to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B."). Further, M.R. Civ. P. 80B

assertions alleging obstructionist action, including the issuance of a stop work order issued on September 28, 2016, Complaint, ¶ 40 (since lifted by the Superior Court, **Exhibit 4**, p. 2, ¶2); the filing of a motion for contempt in 2017; Complaint, ¶41; complaints about a lack of contact in 2017; Complaint, ¶¶47-51; denial of "the applicants" overland permit addressed to the Vessel on November 2, 2017; Complaint, ¶59, and the filing of a currently pending action, CV-17-58, addressed to the Town's fraudulent transfer and declaratory relief claims, Complaint, ¶63-65. The Town's court proceeding in CV-17-58 to enforce its rights is normal petitioning activity and not fodder for constitutional or other claims. The other items alleged by Plaintiffs occurred well outside of the time limits for applicable statutes of limitations, especially in relation to asserted failures to approve permit applications. *See* M.R. Civ. P. 80B.[8]  Such claims are legally precluded.

## II.      Plaintiffs' Takings Claims Fail As A Matter of Law.

Plaintiffs' takings claims (Count I) are founded on incorrect and implausible assertions. Plaintiffs breezily allege that they *both* own the Vessel and the Real Property.  Based on the 2014 Consent Order, this is not the case.  That Order required IRF to transfer, in a self-executing manner,

---

provides "[the time within which review may be sought shall be as provided by statute, except that if no time limit is specified by statute, the complaint shall be filed within 30 days after notice of any action or refusal to act of which review is sought unless the court enlarges the time in accordance with Rule 6(b), and, in the event of a failure to act, within six months after expiration of the time in which action should reasonably have occurred."

[8] As found by the Superior Court in the 07/03/18 Attorney Fee Order, the Court stated: "[t]he Court does not accept the arguments made by the Foundation and by Becker that the Foundation's attempts to purge itself of contempt have been improperly frustrated by the Town.  If the Town's denial of an over-limit road permit was invalid, Becker and the Foundation could have appealed that decision.  They did not do so.  The Town is not responsible for the opposition of landowners at the proposed launch site. If those landowners do have a legal basis to oppose Becker's proposed launching plan, Becker can seek legal recourse.  It is significant that he had not done so." **Exhibit 9** at p. 2; Complaint, ¶62 (referencing same). Plaintiffs' claims founded on generalized grievances concerning alleged permit denials outside of the time limits for appeal or the statute of limitations are precluded as a matter of law.

ownership to the Real Property and Vessel to the Town in 2016 if the deadline of September 9, 2016 was not met.  Plaintiffs admit that this deadline was not met, resulting in release of the Deed and Bill of Sale from escrow by the Mediator to the Town in 2016. Complaint, ¶39; **Exhibit 1**.

Concerning the Real Property, the Town's Deed and the 2014 Consent Order are conclusive proof that the Town, and not Arndt or IRF, owns the Real Property.  The 2014 Consent Order is a voluntary agreement that was overseen and entered as a final judgment of the Superior Court with the oversight and involvement of the Mediator.  It has the force of law and IRF presently is in contempt of the 2014 Consent Order. *See* **Exhibits 3, 4, 8, 9**.  Arndt has no basis to assert *any* property interest in the Real Property, which was transferred *by IRF* to the Town in 2016. **Exhibits 1, 2**.  Further, IRF has no basis to assert any taking after it voluntarily agreed to the obligations and conditions of the 2014 Consent Agreement.  *Leroy Land Dev. v. Tahoe Reg. Plan. Agency*, 939 F.2d 696, 698 (9th Cir. 1991) (rejecting takings claim on settlement condition and stating that "a contractual promise which operates to restrict a property owner's use of land cannot result in a "taking" because the promise is entered into voluntarily, in good faith and is supported by consideration."). The Real Property cannot serve as the basis for a "takings" claim because IRF has not owned the Real Property since 2016. 14 M.R.S. § 752.

The Vessel also cannot serve as the basis for a "takings claim."  Under the 2014 Consent Order, the Town is the owner of the Vessel.  Although a properly executed Bill of Sale has not been delivered to the Town, *see* **Exhibit 1** at Bill of Sale, that does not change the force of the 2014 Consent Order, which provided that transfer was to be "self-executing." **Exhibit 1** at Ex. A thereto, ¶2; *see also* Complaint, ¶31 (alleging that the Memorandum of Agreement within the 2014 Consent Order "gave the Town a recordable security interest in the land on which the Vessel sat and a UCC interest in the Vessel itself that would be self-executing."). A voluntary consent order, entered as

a judgment of the Superior Court, and for which no appeal has been taken, may reflect a voluntary transfer of the Vessel and the Real Property by operation of law, but it does not reflect any "taking" of the Vessel or the Real Property.  *Leroy Land Dev.*, 939 F.2d at 696.

In all other respects, Plaintiffs have failed to plausibly allege any facts that could support claims for a taking. To establish a takings claim, Plaintiffs had to plausibly allege and support: 1) an independent property interest and 2) that government action "cause[d] an illegal taking of th[at] interest[ ]." *FEDEQ DV004, LLC v. City of Portland*, 2024 WL 1374774, at \*10–11 (D. Me. Mar. 31, 2024), quoting *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 973-74 (1st Cir. 1993).[9] Plaintiffs have not plausibly alleged any per se taking where the Town instituted condemnation proceedings invoking eminent domain or similar powers.  Plaintiffs also have not plausibly alleged that any specific restrictions were imposed on them (as opposed to those agreed by them) that have denied Plaintiffs all economically beneficial uses of their property. *Id*. [10]

Generalized allegations of denial of permits requests, Complaint, ¶¶87-88, "shifting the goal posts," Complaint, ¶91, or alleged hinderance of efforts to allow Plaintiffs to purge contempt,

---

[9] Takings come in two variants: 1) physical "per se" takings where a municipality institutes formal condemnation or physical appropriation of property, and 2) regulatory takings, where a government actor places "some significant restriction on an owner's use of his or her property where such restrictions prevent "*all* economically beneficial uses" of land.  *FEDEQ DV004, LLC v. City of Portland*, 2024 WL 1374774 at \*10–11, citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992) (emphasis in original).

[10] Plaintiffs claims seeking relief under 42 U.S.C. § 1983 also fail as a matter of law.  A claim under Section 1983 requires well-pleaded allegations addressed to the following: (1) the conduct complained of was committed by a person acting under the color of state law, and (2) that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. See *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989). Regarding the second inquiry, "the conduct complained of must have been causally connected to the deprivation." *Id*.  Further, state constitutional claims fail as a matter of law because they have not been brought under a state enabling statute, 5 M.R.S. §§ 4681-85.  As such, all state constitutional claims, Counts I, II, III, fail as a matter of law. *Khaqan*, 2024 WL 691445 at \*8-9 (holding that state constitutional claims untethered to a state enabling statute fail to state a claim).

Complaint, ¶¶95-96, cannot serve as the factual basis for a taking.[11] The imposition of court-ordered fines, Complaint, ¶¶95-96, whether suspended or not, **Exhibit 10,** 07/03/18 Attorney Fee Order" at ¶ 9, p. 4, where IRF has the power to purge its own contempt, cannot and does not amount to a taking. The transfer of the Real Property and Vessel to the Town in 2016 was not unilaterally imposed by the Town, but the product of the 2014 Consent Order that Plaintiffs agreed to (and seek to enforce in this action). *See* **Exhibit 1**; *see* Count V.  The 2016 transfers of the Real Property and Vessel are well outside of the statute of limitations. 14 M.R.S. § 752.  Based on legal impossibility, implausibility and untimeliness, this Court should dismiss Count I.

### III.     Plaintiffs' Equal Protection Claims Fail As A Matter of Law.

In support of Plaintiffs' equal protection claims (Count II), Plaintiffs allege that they have constitutionally protected property interests in the Real Estate and the Vessel; that they qualify as a "class of one" for equal protection purposes; and that they have been treated differently from other landowners, ship owners, and permit applicants in the Town. Complaint ¶¶110-116. They rely on denial of an overland permit application om November 2, 2017 as evidence of disparate treatment. Complaint ¶59. They cite to conditions from the 2017 overland permit denial (requiring boat launch access and neighbor approval to cross land), Complaint ¶113, and allege that the Town's prevention of Plaintiffs' Vessel launch "shocks the conscience." Complaint, ¶¶114, 115.

The overland permit decision from 2017 that Plaintiffs rely upon was issued more than 6 years ago and was not appealed.  *See* **Exhibit 9,** 07/03/18 Attorney Fee Order at p. 2 ("If the Town's denial of an over-limit road permit was invalid, Becker and the Foundation could have appealed

---

[11] Indeed, the Court has found that IRF has the ability to purge itself of contempt by dismantling and moving the Island Rover, but it refuses to do so.  The Court found, by clear and convincing evidence, that "IRF does have the ability to remove the hull by cutting it up and disposing of the pieces as scrap." *See* **Exhibit 3**, 06/26/17 Contempt Order, at p. 4-5.

that decision. They did not do so."); Complaint, ¶62 (referencing 07/03/10 Attorney Fee Order). Alleged permit denials, including time-barred claims based on such denials, cannot serve as the basis for an equal protection claim. 14 M.R.S. § 752; M.R. Civ. P. 80B.

Separately, Plaintiffs have failed to plausibly allege any equal protection claim under federal or state standards. Where a plaintiff brings a "class of one" equal protection claim, the complaint must allege facts sufficient to plausibly show that he or "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *FEDEQ DV004, LLC v. City of Portland*, 2024 WL 1374774, at *8–9 (D. Me. Mar. 31, 2024) (citing *Back Beach Neighbors Comm. v. Town of Rockport*, 63 F.4th 126, 130 (1st Cir. 2023)). To bear their burden of showing that others are "similarly situated," class-of-one plaintiffs must "identify[ ] comparators who are 'similarly situated *in all respects relevant to the challenged government action.*'" *McCoy v. Town of Pittsfield*, 59 F.4th 497, 507 (1st Cir. 2023) (quoting *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 640 (1st Cir. 2013)) (emphasis added).[12]

---

[12] The First Circuit's decision in *McCoy v. Town of Pittsfield, NH*, is instructive on what constitutes an adequate pleading in a class-of-one equal protection claim related to land use:

> Class-of-one plaintiffs bear the burden of identifying comparators who are "similarly situated in all respects relevant to the challenged government action." Plaintiffs must show an "extremely high degree of similarity" between themselves and those comparators. This requirement "must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" "It is inadequate merely to point to nearby parcels in a vacuum and leave it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated."

*McCoy v. Town of Pittsfield, NH,* 59 F.4th 497, 507-08 (1st Cir. 2023) (first quoting *Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 640 (1st Cir. 2013); and then thrice quoting *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007)).

"Plaintiffs must show an 'extremely high degree of similarity' between themselves and those comparators." *Id.* (quoting *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007)).[13]

Plaintiffs cannot allege any constitutionally protected deprivation of property for all of the reasons stated above. Further, Plaintiffs have not plausibly alleged or described any similarly situated comparators who are similarly situated "*in all respects relevant to the challenged government action.*" *Barrington Cove Ltd. P'ship,* 246 F.3d at 8. Plaintiffs also have failed to plausibly allege any malicious or bad faith intent to injure. *See Buchanan v. Maine,* 469 F.3d 158, 178 (1st Cir. 2006) ("[A] plaintiff not relying on 'typical' impermissible categories, such as race or religion, must show that he was intentionally treated differently from others similarly situated, ... and that the different treatment was based on a malicious or bad faith intent to injure."). These defects are fatal to Count II, which should be dismissed. *FEDEQ DV004, LLC v. City of Portland*, 2024 WL 1374774, at *9 (granting dismissal and stating "the Complaint offers no more than that conclusory, threadbare recital of unequal treatment, and fails to provide any further details from which a trier of fact could find that the allegedly 'similar' projects are 'extremely' comparable 'in *all* respects relevant to the challenged government action.'") (quoting *McCoy*, F.4d at 507.)

## IV.    Plaintiffs' Due Process Claims Fail As A Matter of Law.

Plaintiffs only provide generalized allegations regarding alleged violation of procedural due process and substantive due process, asserting that they have been deprived of their ability to

---

[13] Two persons or entities are similarly situated if "a prudent person, looking objectively at the incidents [complained of], would think them roughly equivalent and the protagonists similarly situated ... 'in all relevant respects.'" *Clark v. Boscher*, 514 F.3d 107, 114 (1st Cir. 2008) quoting and citing *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp.,* 246 F.3d 1, 8 (1st Cir. 2001). Applying this *Barrington Cove* test, the Court must be able to compare apples to apples. *Id*. Plaintiffs have not provided any allegations concerning any comparators who are similarly situated "*in all relevant respects.*" *Barrington Cove Ltd. P'ship.,* 246 F.3d at 8 (emphasis in original and citations omitted).

15

seek and obtain land use and permitting approvals on fair and lawful terms. Complaint, ¶123.  They also assert procedural due process was violated by decision making processes that were structured to ensure denial regardless of compliance and were otherwise arbitrary, biased and infected with improper motives.  Complaint, ¶ 125.  They allege that substantive due process was violated based on permit denials lacking any basis for denial, the CV-17-58 action, and outrageously arbitrary deprivation of property interests so as to be a gross abuse of governmental authority.  Complaint, ¶¶127-133. Plaintiffs allege "administrative obstacle-creation" depriving Plaintiffs of their interests in the Vessel and Real Estate. Complaint, ¶¶131, 132.  As above, such claims based on administrative denials are barred by the six-year statute of limitations, 14 M.R.S. § 752, and earlier time periods for appeal of government action and inaction.  *See, e.g.,* M.R. Civ. P. 80B.

Plaintiffs have not plausibly alleged any due process violation under federal and state authority.  Plaintiffs cannot allege any constitutionally protected deprivation of property in the Real Property or Vessel for all of the reasons stated above. *FEDEQ DV004, LLC v. City of Portland*, 2024 WL 1374774, at *7 (due process claim requires protected property interest or liberty interest and that defendant, acting under color of state law, deprived the claimant of such interest without constitutionally adequate process).

Plaintiffs also cannot rely on a permit request for a temporary launch site for the Vessel submitted by Carter Becker (currently under appeal pursuant to M.R. Civ. P. 80B).  *See* Complaint ¶¶74, 74 (describing denial coastal water commission permit application for temporary launch site and appeal under M.R. Civ. P. *by Becker alone*); Complaint, ¶143 (alleging injury based on contempt action, denial of overlimit permit, denial of launch access, denial of permit application for a proposed temporary launch).

This Court has held that the existence of adequate post-deprivation remedies, such as appeal of administrative decisions under M.R. Civ. P. 80B, precludes due process claims. In *FEDEQ DV004, LLC v. City of Portland*, the Court wrote: "[U]nauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional ... deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." 2024 WL 1374774, at *7 (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).

Plaintiffs' Complaint does not allege particularized facts that - if established - would show a post-deprivation remedy was either absent or inadequate. Rather, Plaintiffs concurrently assert injury based on a temporary launch permit application submitted by another person (Carter Becker) that is admittedly under appeal pursuant to M.R. Civ. P. 80B. Complaint, ¶¶143, 74, 75. Plaintiffs' failure to appeal permit requests from 2017, **Exhibit 9** at p. 2 ("They did not do so."); Complaint, ¶62 (referencing same), are time barred and cannot serve as the basis for any due process claim.

In all other respects, Plaintiffs have not plausibly alleged any conduct that "shocks the conscience" in relation to their substantive due process claim. *Pagán v. Calderón*, 448 F.3d 16, 32 (1st Cir. 2006); *Rivera v. Rhode Island*, 402 F.3d 27, 33–34 (1st Cir.2005); *Mongeau v. City of Marlborough*, 492 F.3d 14, 17 (1st Cir.2007) (stating that in order to assert a valid substantive due process claim, plaintiff in a land-use dispute was required to prove that the defendant city government's actions shocked the conscience).[14] As such, this Court should dismiss Count III.

---

[14] "'[T]he substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong.'" *Mongeau v. City of Marlborough,* 492 F.3d 14, 17 (1st Cir. 2007) (quoting *Pagán,* 448 F.3d at 33); *see also PFZ Properties, Inc. v. Rodríguez,* 928 F.2d 28, 31 (1st Cir.1991) ("[R]ejections of development projects and refusals to issue building permits do

### V.        Plaintiffs' Equitable Estoppel Claim Fails As A Matter of Law.

Plaintiffs assert an affirmative claim of equitable estoppel as Count IV, broadly asking this Court to preclude the Town from pursuing its civil action (CV-17-58) and contempt action (CV-14-28) against Plaintiffs and from further hindering Plaintiffs' efforts to launch the Vessel. Complaint, ¶144.  Plaintiffs point to consent agreements, hold harmless letters, promises of support have included them, supporters, and interested parties to invest money and labor to complete the hull and launch the Vessel. Complaint, ¶141. They allege harm to Plaintiffs based on the Town's pursuit of contempt actions, its denial of overlimit permits, its denial of launch access, its denial of Plaintiffs' application for a proposed temporary launch.  Complaint, ¶143.

Plaintiffs are barred as a matter of law from asserting an equitable estoppel claim against the Town in an affirmative manner, as here.  Maine's Law Court has made clear that equitable estoppel is a defense and may not be used affirmatively against a municipality as a sword and can be only used as a shield. *Waterville Homes, Inc. v. Maine Department of Transportation*, 589 A.2d 455, 4-57 (Me. 1991) (equitable estoppel is an affirmative defense that can be used as a shield but not as a sword); *Tarason v. Town of S. Berwick,* 2005 ME 30, ¶ 16, 868 A.2d 230 (citing *Buker v. Town of Sweden,* 644 A.2d 1042, 1044 (Me.1994)) (affirming "that equitable estoppel can be asserted against a municipality only as a defense and cannot be used as a weapon of assault.").

To the extent that Plaintiffs seek to rely upon what they describe as a "hold harmless letter" addressed to "To Whom It May Concern," *See* **Exhibit 1 (**July 25, 2014 Labor and Materials Letter within 2014 Consent Order), it is important to note that this 2014 generalized letter to the public

---

not ordinarily implicate substantive due process."); *Custodio,* 964 F.2d at 45 ("[T]he due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes. In the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief.").

at large cannot be reasonably construed as a liability shield against failure to comply with generally applicable legal authority.  The letter makes this clear by stating:  "You of course must still comply with all relevant state and local environmental laws, as well as relevant statutes, ordinances, and case law." *Id*.  Setting aside that Plaintiffs seek to rely on the asserted reliance of Carter Becker, "Falls Point Marine," or other non-Plaintiffs, they may not reasonably rely upon this 2014 letter to estop the Town from pursuing legal recourse in CV-14-28 and CV-17-58, where IRF is in contempt of the 2014 Consent Order for failing to purge its contempt where it has been found capable of doing so.  *See* **Exhibit 9**, 07/03/18 Attorney Fee Order (finding that IRF can meet compliance with the 2014 Consent Order "by disassembling the hull and disposing of it as scrap or reassembling it [at] another location.").  An affirmative equitable estoppel claim against municipality is precluded as a matter of law and barred by the statute of limitations, warranting dismissal of Count IV. *Tarason,* 2005 ME 30, ¶ 16, 868 A.2d 230.

### VI.      Plaintiffs' Request for Declaratory Relief Should Be Declined.

Plaintiffs ask the Court to declare that the Town is in violation of the 2014 Consent Order by failing to "cooperate with and support Plaintiffs' permitting efforts, including providing technical support and support for permitting applications necessary for third-party approvals, to the extent allowed by law." Complaint, ¶147.  Plaintiffs assert the Town is in breach of the 2014 Consent Order by "obstructing Plaintiffs' efforts, denying permits on pretextual grounds, shifting requirements, refusing to cooperate in good faith and otherwise engaging in conduct that has prevented Plaintiffs from achieving lawful compliance and completion of the vessel's launch[,]" resulting in a violation of the "2014 Settlement Agreement and Order[,]" the 2014 Consent Order. Complaint, ¶¶148, 149.  Plaintiffs ask the Court to declare that Defendant must comply with its obligations under the 2014 Consent Order. Complaint, ¶150.

This Court should exercise its broad discretion to decline to entertain Plaintiffs' requests for declaratory relief because the Superior Court, in CV-14-28, first and foremost, has jurisdiction over enforcement of its own judgments and orders. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 282–83 (1995) (holding that the existence of a parallel state proceeding is a significant factor in deciding whether or not to exercise jurisdiction under 28 U.S.C. § 2201); *Diaz–Fonseca v. Puerto Rico*, 451 F.3d 13, 39 (1st Cir. 2006) ("The Act 'neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies.'") (quoting *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 493 (1st Cir. 1992)).  This Court should decline jurisdiction over Count V because the requested declaration will not terminate the controversies relating to the 2014 Consent Order.  *OneBeacon Am. Ins. Co. v. Elwell*, 2009 WL 4910056, at *6 (D. Me. Dec. 13, 2009).  Plaintiffs' requested declaratory relief should be declined because a declaratory judgment "provides a remedy for disputes that have federal jurisdiction." *Lieberman v. MacMaster*, 2013 WL 4500573, at *3 (D. Me. Aug. 21, 2013), and the state court can more effectively and efficiently resolve the question posed, to the extent it has not done so already.  **<u>Exhibit 9</u>,** 07/03/18 Attorney Fee Order (forcefully rejecting arguments that the Town has improperly frustrated efforts of IRF to purge itself of contempt).

WHEREFORE, the Town of Freeport respectfully requests the Court to dismiss all claims asserted in this action (including federal claims and state law or equitable claims through supplemental jurisdiction), and grant such other and further relief as the Court deems just.

Dated: March 11, 2026

Respectfully submitted,

*/s/ Daniel J. Murphy*
Daniel J. Murphy, Bar No. 9464
BERNSTEIN SHUR
P.O. Box 9729
Portland, Maine 04104-5029
(207) 228-7120
dmurphy@bernsteinshur.com

Attorney for Defendant Town of Freeport

## CERTIFICATE OF SERVICE

I hereby certified that a copy of the document set forth above and any supporting documents were served via U.S. Mail, First Class, postage prepaid, on the date indicated above on Counsel for Plaintiffs Harold E. Arndt and IRF (Archipelago - Twain Braden, Esq. and Colin Hull, Esq.) and Counsel for Parties-In-Interest Carter Becker and "Falls Point Marine" (Curtis Thaxter - David Silk, Esq. and Jason Theobald, Esq.). Counsel of record registered on CM/ECF for this action will be served the relevant filings through the CM/ECF system.

Dated: March 11, 2026

Respectfully submitted,

*/s/ Daniel J. Murphy*
Daniel J. Murphy, Bar No. 9464

Twain Braden, Esq. and Colin Hull, Esq.
Archipelago
One Dana Street, 4th Floor
Portland, ME   04101

David Silk, Esq. and Jason Theobald, Esq.
Curtis Thaxter LLC
200 Middle Street, Suite 1001
Portland, ME 04101